IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DALE OTIS PALMER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 06-576-SLR |
| | ) |
| WARDEN THOMAS CARROLL, et al., | ) |
| | ) |
| Defendants. | ) |

Dale Otis Palmer, Pro Se Plaintiff. James T. Vaughn Correctional Center, Smyrna, Delaware.

Catherine C. Damavandi, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware. Counsel for Defendants Thomas Carroll and James Welch.

Eileen M. Ford, Esquire, Marks, O'Neill, O'Brien & Courtney, P.C., Wilmington, Delaware. Counsel for Defendants Iihoma Chuks, Dr. John Durst, Dr. Frederick VanDusen, Dr. Lawrence McDonald, and Correctional Medical Services.

**MEMORANDUM OPINION**

Dated: August 6, 2009
Wilmington, Delaware

*[signature]*
**ROBINSON, District Judge**

## I. INTRODUCTION

Plaintiff Dale Otis Palmer ("plaintiff"), an inmate at the James T. Vaughn Correctional Center ("VCC"), Smyrna, Delaware, filed this civil rights complaint pursuant to 42 U.S.C. § 1983. (D.I. 2, 6, 9, 50, 119) Presently before the court are the parties' motions for summary judgment, motions for sanctions, motions to strike, and motion for extension of time.[1] (D.I. 268, 269, 273, 274, 275, 276, 277, 278, 279, 283, 287, 294, 301, 306, 307, 308) For the reasons set forth below, the court will deny plaintiff's motions for summary judgment, grant defendants' motions for summary judgment and deny the remaining motions as moot.

## II. BACKGROUND

Plaintiff's complaint was signed on August 3, 2006, postmarked September 13, 2006, and file-stamped September 14, 2006. (D.I. 2) Plaintiff was housed at the Sussex Correctional Institution ("SCI"), Georgetown, Delaware from May 15, 2003 until May 27, 2005, when he was transferred to the VCC, where he is currently housed. (D.I. 288, p. 2, ¶ 4)

Plaintiff testified that his complaint boils down to three issues: (1) the failure to receive a third injection required for a hepatitis B vaccine; (2) the failure to provide requested treatment for hepatitis C ("HCV") with either interferon or ribavirin; and (3) the failure to receive a liver biopsy. (D.I. 286, app. 39-40) Medical records indicate that plaintiff suffers from GERD (i.e., gastroesophageal reflux disease or acid reflux); allergic

---

[1] Seven defendants remain in this case. All other defendants have been dismissed. (*See* D.I. 6, 11, 186)

rhinitis, CKD (i.e., chronic kidney disease), stage III;[2] and hepatitis B and C.[3] (D.I. 282, ex. 24(a), D.I. 299, supp. app. 314) He tested positive for HCV in the late 1980s. (D.I. 292, ex. 1) HCV is a contagious liver disease that ranges in severity from a mild illness lasting a few months to a serious, lifelong illness that attacks the liver. (D.I. 286, ex. G)

Plaintiff is not the only inmate with hepatitis. He testified that certain inmates receive treatment, including biopsies. (D.I. 285, app. 3) The treatment received by an inmate depends upon the severity of the disease. (*Id.*) Plaintiff does not consider lab work treatment. (*Id.* at 15) According to defendant James Welch ("Welch"), director of health care services for the Delaware Department of Correction ("DOC"), during the relevant time period of the complaint, there was no prison policy concerning chronic diseases and/or housing guidelines. (D.I. 281, ex. 10)

On April 6, 2006, plaintiff wrote to defendant Thomas Carroll ("Carroll"), former warden at the VCC, requesting his help in obtaining treatment for hepatitis. (D.I. 281, ex. 2) The letter states, "I have tried to convince the medical doctors here at D.C.C. to give me a biopsy to determine if I have a liver disease from this hepatitis and they keep telling me I'm not sick enough." (*Id.*) On July 7, 2006, Scott Altman ("Altman"), the quality assurance monitor for defendant Correctional Medical Services ("CMS"), carbon

---

[2]Stage III indicates a moderately reduced kidney function. Most stage III CKD cases can be appropriately managed in primary care. www.renal.org. Plaintiff was diagnosed with this condition after he filed this lawsuit. He has seen an outside consultant and received a renal ultrasound. (D.I. 299, supp. app. 318-19) Plaintiff's kidney condition and treatment are not issues before the court.

[3]Plaintiff also has bilateral, severe bunion deformities, but no osteoarthritis. (D.I. 281, ex. 281, ex. 41(a). Plaintiff was evaluated by a podiatrist on two occasions: November 29, 2006 and July 16, 2007. (*Id.* at ex. 41(b)) No surgical intervention was warranted and plaintiff was prescribed anti-inflammatory and pain medication. (*Id.*)

2

copied Carroll on a letter responding to plaintiff's request for information. (D.I. 281, ex. 1) Carroll does not recall receiving any letters from plaintiff. (D.I. 281, exs. 1(a), (b))

After he filed his complaint, plaintiff submitted additional written complaints on September 21, 2006, November 7, 2006, December 15, 2006, June 2, 2007, June 12, 2007, June 29, 2007, and January 6, 2008, to various individuals including the director of CMS, Carroll, the Commissioner of the DOC, and Welch requesting medical care for his hepatitis condition. (D.I. 281, exs. 3-8, 25(a)) In many instances, plaintiff carbon copied Carroll and/or Welch on the correspondence. According to Carroll, depending on the subject matter, inmate letters are forwarded to proper personnel for appropriate action. (D.I. 70, ¶ 2) Although Welch has replied to inmates' letters, he usually does not. (D.I. 69, ¶ 14-15) If the letter concerns a medical problem, it is forwarded to the medical vendor. (D.I. 69, ¶ 14; D.I. 281, ex. 11)

Susan Schappell ("Schappell) is a retired registered nurse who was employed by First Correctional Medical, Inc. (FCM).[4] She stated that hepatitis A and B vaccines were ordered for plaintiff on September 3, 2003. (D.I. 286, app. 21) Schappell administered the first dose of the hepatitis A vaccine on September 7, 2003, and the second dose on March 19, 2004. (*Id.* at 22-22a) Schappell administered the first dose of the hepatitis B vaccine on September 15, 2003, the second dose on October 29, 2003, and the third dose on March 19, 2004. (*Id.* at 21-22) Plaintiff does not recall receiving the third dose of the hepatitis B vaccine.

---

[4]FCM was the medical service provider for the DOC immediately prior to July 1, 2005, when CMS became the medical service provider.

Defendant Iihoma Chuks ("Chuks") is a nurse practitioner, currently employed by CMS, who began her employment with CMS in October 2005. (D.I. 286, app. 151) Prior to her CMS employment, she was employed by FCM from June 16, 2003 until April 2005. (*Id.* at 152) Chuks' job duties do not authorize her to order a liver biopsy or prescribe interferon and/or ribavirin without the express authorization from an infectious disease physician. While Chuks states that she has never represented herself as a medical doctor, plaintiff contends that she has. (*Id.* at 152)

Medical records indicate that plaintiff was seen by Chuks on October 12, 2005 at the chronic care clinic where he complained of heartburn and foot pain. (D.I. 286, app. 168-69) She saw him on May 29 and June 1, 2007 for complaints of abdominal pain and toe pain. (D.I. 286, app. 163, 166) Chuks' signature appears on physicians' orders dated October 12, 2005, April 18, 2007, and June 1, 2007, and progress notes dated May 10, 2006, June 6, 2006, September 30, 2008, October 17, 2008, and November 6, 2008. (*Id.* at 164-5, 167, 175-77) Her name also appears on lab reports dated January 11, 2006, and May 4, 2007. (*Id.* at 172-74)

Defendant Dr. John Durst ("Dr. Durst") treated patients in the chronic care clinic at the VCC from January 2006 through October or November 2006. (D.I. 186, app. 214) Dr. Durst, who is not an infectious disease specialist, does not treat some infectious diseases but, rather, undertakes investigative procedures. (D.I. 281, ex. 54(c)) No single test provides the only means for the diagnosis and treatment of hepatic disease. (D.I. 213, D.I. 281, ex. 53) Each test reflects a different type of investigation in formulating a medical opinion and treatment plan. (*Id.*) According to Dr.

Durst, a liver biopsy is invasive and should be a means of last resort to determine what is wrong with a liver and how badly it is damaged. (*Id.*)

Dr. Durst ordered and reviewed lab work and monitored liver function tests and viral loads to determine if the results were within the normal reference range or elevated. (*Id.* at 214) If the results were elevated, he referred the patient to an infectious disease physician for consultation and treatment as medically needed and determined by the infectious disease physician. (*Id.*) His duties did not include ordering a biopsy or prescribing interferon or ribavirin for patients with HCV. (*Id.*) Dr. Durst followed CMS policy as to how and when to treat inmates with hepatitis when CMS' policy comported with his own independent medical judgment as to the best course of treatment. (D.I. 213, D.I. 281, ex. 52)

Dr. Durst first saw plaintiff on August 2, 2006. He ordered lab work, and it indicated plaintiff's viral load was low and the HCV virus was not detected. (*Id.* at 214-15) Dr. Durst stated that, if present, the HCV did not appear to be active. (D.I. 281, ex. 54(d)) Based upon the medical records and his medical judgment, Dr. Durst would have concluded that a referral to an infectious disease physician was not needed. (*Id.* at 215) Dr. Durst did not suggest any form of treatment for plaintiff as it was to be determined by others qualified to do so, according to their judgment. (*Id.*) Dr. Durst ordered follow-up care and plaintiff was seen by defendant Dr. Frederick VanDusen ("Dr. VanDusen") in the chronic care clinic on or about October 30, 2006.

Dr. VanDusen is a board certified family physician. (D.I. 218, ex. 41) He was employed by CMS from August 2006 through April 2008 as the assistant medical director and chronic care physician. (D.I. 218, ex. 41, D.I. 286, app. 183) Dr.

5

VanDusen is not an infectious disease doctor and does not treat patients with hepatitis. (D.I. 281, ex. 38) He has no independent recollection of plaintiff. (*Id.*)

Medical records indicate that Dr. VanDusen treated plaintiff for bunions and GERD, and discussed plaintiff's concerns regarding HCV. (D.I. 286, app. 183-84) On February 1, 2007, he wrote orders for an HCV followup. (*Id.* at 184) He saw plaintiff on April 4, 2007 and June 29, 2007 in the chronic care clinic and addressed the issue of HCV treatment. (*Id.*) Dr. VanDusen ordered lab work to recheck plaintiff's viral load and liver enzyme levels. (D.I. 281, ex. 41(a)) Labs were performed on May 17, 2007 and June 27, 2007 and revealed a "vanishingly low" viral load and liver enzymes that were not elevated. (*Id.*) The low counts are a sign that plaintiff's hepatitis is not progressing and, therefore, a biopsy, interferon, and ribavirin are not necessary. (D.I. 281, ex. 41(a), D.I. 286, app. 184) Dr. VanDusen referred plaintiff to an infectious disease physician because plaintiff insisted upon a second opinion. ( D.I. 286, app. 184)

Defendant Dr. Lawrence McDonald ("Dr. McDonald") is an infectious disease physician. (D.I. 286, ex. G) Dr. McDonald began providing plaintiff with medical services as of April 14, 2007 after plaintiff filed this lawsuit. (D.I. 299, supp. app. 317) Dr. McDonald explained that a patient will always test positive once the HCV antibody is identified. (D.I. 281, ex. 55(d)) The antibody only attests to exposure to the HCV virus, not a disease state. (*Id.*) Viral loads are indicators of the presence of active virus, and do not predict the severity of disease. (D.I. 281, ex. 55(c)) Plaintiff has been exposed to the HCV virus and has demonstrated the antibody to HCV. (*Id.*)

6

Since Dr. McDonald began treating him, plaintiff's physical examinations and lab reports have not indicated that his HCV has elevated to the chronic level as the HCV RNA (i.e., ribonucleic acid) is "non-detectable." (D.I. 286, ex. G) Plaintiff falls in the category of individuals who are able to spontaneously clear the virus and cure HCV. (D.I. 286, ex. G) Dr. McDonald did not provide plaintiff any direct treatment for HCV because plaintiff has no detectable virus. (D.I. 281, ex. 55(e), D.I. 286, ex. G) In his opinion, plaintiff is not a candidate for a liver biopsy or in need of interferon and ribavirin to treat his HCV. (D.I. 286, ex. G)

Dr. McDonald treats plaintiff in accordance with the HCV Pathway utilized by CMS in conjunction with his own independent medical judgment and, accordingly, plaintiff is not a candidate for the treatment he currently seeks.[5] (*Id.*) Additionally, because he is not a candidate for antiviral therapy, plaintiff is not a candidate for genotyping. (*Id.*) After reviewing all of plaintiff's lab reports, Dr. McDonald opined that plaintiff's HCV condition has not changed since before or after he filed this lawsuit.[6] (*Id.*)

The record reflects that plaintiff submitted medical request slips on April 7, 2006, March 17, 2007, October 4, 2007, and December 26 and 28, 2008. (D.I. 282, exs. 14-

---

[5]The CMS Chronic Hepatitis C Pathway is used primarily for the evaluation, treatment and management of patients with chronic HCV. (D.I. 286, app. 293-96)

[6]Plaintiff recently asserted that Dr. McDonald is no longer treating him in retaliation for filing this lawsuit. (D.I. 302) Dr. McDonald informs the court that he recently advised plaintiff that he was released from his care because plaintiff's HCV is "non-detectable." (D.I. 303, ex. A) Dr. McDonald explains that plaintiff will continue to have follow-up and monitoring of his viral loads and liver functions and, if test results indicate the need for an infectious disease physician, he will be referred for evaluation and treatment as necessary. (*Id.*)

18). He received either medical care or responses to his requests on October 5, 2007 and January 8 and 15, 2009. (D.I. 282, exs. 16-18)

Plaintiff's immunization records indicate that he received the required two injections for the hepatitis A vaccine and the required three injections for the hepatitis B vaccine. (D.I. 282, ex. 19)

Medical records indicate that in 2003, plaintiff was either seen by medical personnel, his chart reviewed, prescribed medication or testing, or had labs drawn on March 18, June 23, August 18, 19, 20, 24, 25, and 26, September 3, 7 and 30, November 3 and 10, and December 4 and 19. (D.I. 282, ex. 20(a), D.I. 289) Similarly, medical services were provided in 2004: on January 15, 22, and 27, February 2 and 9, April 4, 12, and 14, May 26, June 12, 14, and 28, July 26, September 17, October 8, November 1, and December 2; in 2005: on January 28, February 24, April 26, May 16 and 27, June 8, October 12, and December 21; in 2006: on January 15, February 17, April 14, May 10, June 6, August 2, October 10 and 30, and November 2; in 2007: on February 2, March 27, April 5, 14, and 18, June 1, 27, and 29, August 7 and 18, October 4 and 8, and November 10; and in 2008: on February 23, March 24 and 26, April 11, August 24 and 29, October 1, 2, 10, 16, 17 and 20, and November 6. (D.I. 282, exs. 20(a) and (b), 30-32, 48, D.I. 286, app. 27, 198, 201, 242-49, D.I. 289, D.I. 299 supp. app. 333)

Plaintiff's medical records include chronic disease clinic follow-up notes for August 18, 2003, August 2, 2006, April 5 and 14, 2007, June 29, 2007, August 18, 2007, October 8 and 16, 2007, November 7, 2007, March 24, 2008, April 2, 2008, June 5, 2008, August 23, 2008, September 12, 2008, October 16, 2008, November 6, 2008,

8

December 18, 2008, January 12, 2009, and April 4 and 16, 2009. (D.I. 282, exs. 24(a), (b), (c) and (d), 56-60; D.I. 286, app. 24, 202, 203, 219, 231, D.I. 299, supp. app. 326, 329, 334-337)

Plaintiff's medical records contain lab test results dated as follows: in 2003, August 21 and August 27; in 2004, December 8 and 9; in 2005, March 31 and August 23; in 2006, January 5 and 11, February 3, May 10, and August 18; in 2007, April 12 and 16, May 3, 4, 21, and 22, June 28, and August 7 and 18; in 2008, January 23, April 10, May 13, June 12, 21, and 26, August 28, October 9, 13, 16, and 17, and November 11; and in 2009, February 14, April 7, and May 27. (D.I. 282, exs. 33-35, 42-45, 49, D.I. 286, app. 25, 41-52, 54-64, 109-10, 112, 116, 118-50, 284, D.I. 299 supp. app. 338-44)

## III. DISCUSSION

### A. Standard of Review

The court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether there is a genuine issue of material fact, the court may not weigh the evidence or determine the truth in the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007).

The moving party bears the burden of proving that no genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986). Where the movant is the defendant, or the party that does not have the burden of proof on the underlying claim, it "has no obligation to produce evidence negating its opponent's case." *National State Bank v. Federal Reserve Bank of New York*, 979 F.2d 1579, 1581 (3d Cir. 1992). Rather, the movant can simply "point to the lack of any evidence supporting the non-movant's claim." *Id.* A party opposing summary judgment "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue" for trial. *Podobnik v. United States Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Plaintiff moves for summary judgment against all defendants on the grounds that they were deliberately indifferent to his serious medical needs. Medical defendants CMS, Chuks, Dr. Durst, Dr. VanDusen, and Dr. McDonald oppose the motion and move for summary judgment on the grounds that certain claims are moot or time-barred, plaintiff is receiving appropriate medical and there is no evidence of deliberate indifference to a serious medical need.[7] (D.I. 283) State defendants Carroll and Welch

---

[7]Medical defendants correctly assert that claims of medical malpractice are not properly before the court. The complaint has not been construed as alleging medical malpractice. In the event that plaintiff intended to raise such claims, the court notes they are non-cognizable due to plaintiff's lack of compliance with the Delaware Health

(collectively "State defendants") oppose plaintiff's motions for summary judgment and move for summary judgment on their own behalf on the grounds that certain claims are time-barred and directed against improper parties, there is no evidence of deliberate indifference to a serious medical need, Carroll had no personal involvement in the alleged wrongs asserted by plaintiff, and they are immune by reason of the Eleventh Amendment and qualified immunity. (D.I. 287, 288)

### B. Vaccinations

Plaintiff alleges that dismissed defendant Dr. Roberta Burns ("Dr. Burns") failed to completely immunize him against hepatitis B. The series of three injections for the hepatitis B vaccine began in 2003 and were to be completed by March 19, 2004.

The claim is moot inasmuch as Dr. Burns was dismissed for failure to serve on November 13, 2008. (D.I. 186) Moreover, plaintiff's immunization records indicate he was vaccinated against hepatitis A and B. Additionally, Schappell states that her review of the medical records and plaintiff's lab reports indicate plaintiff has developed an immunity to hepatitis B which generally results as a result of being vaccinated. Finally, said claim is time-barred by the applicable two-year statute of limitations for 42 U.S.C. § 1983 claims.[8] See *Hardin v. Straub*, 490 U.S. 536, 541 (1989); *Gibbs v. Deckers*, 234

---

Care Negligence Insurance and Litigation Act. See 18 Del. C. §§ 6801-6865.

[8]CMS did not become the medical provider at the VCC until July 1, 2005. Hence, neither it, nor its employees, can be held liable for claims that occurred prior to that date. To the extent the claim is raised against State defendants, it fails inasmuch as Carroll was not the warden at the SCI where plaintiff was housed at the time he was to receive the vaccinations. It fails against Welch as he did not begin his employment with the DOC until November 23, 2005.

F. Supp. 2d 458, 461 (D. Del. 2002); 10 Del. C. § 8119. Plaintiff filed his complaint more than two years following the March 2004 vaccine completion date.

There are no genuine issues of material fact and, therefore, as to this issue, the court will deny plaintiff's motions for summary judgment and will grant defendants' motions for summary judgment.

### C. Medical Needs

When bringing a § 1983 claim, a plaintiff must allege that some person has deprived him of a federal right, and that the person who caused the deprivation acted under color of state law. *West v. Atkins,* 487 U.S. 42, 48 (1988). The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 103-105 (1976). However, in order to set forth a cognizable claim, an inmate must allege (i) a serious medical need and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need. *Estelle v. Gamble,* 429 U.S. at 104; *Rouse v. Plantier,* 182 F.3d 192, 197 (3d Cir. 1999). A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and fails to take reasonable steps to avoid the harm. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). A prison official may manifest deliberate indifference by "intentionally denying or delaying access to medical care." *Estelle v. Gamble,* 429 U.S. at 104-05.

However, "a prisoner has no right to choose a specific form of medical treatment," so long as the treatment provided is reasonable. *Harrison v. Barkley*, 219 F.3d 132, 138-140 (2d Cir. 2000); *Davis v. First Corr. Med.*, 589 F. Supp. 2d 464 (D. Del. 2008). An inmate's claims against members of a prison medical department are

not viable under § 1983 where the inmate receives continuing care, but believes that more should be done by way of diagnosis and treatment and maintains that options available to medical personnel were not pursued on the inmate's behalf. *Estelle v. Gamble*, 429 U.S. 97, 107 (1976). Finally, "mere disagreement as to the proper medical treatment" is insufficient to state a constitutional violation. *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004) (citations omitted).

### 1. Individual medical defendants

Plaintiff argues that (1) Dr. VanDusen denied him medications and a liver biopsy and failed to provide him information on the progression of hepatitis B and C; (2) on two occasions Dr. Durst denied him medication and a liver biopsy for hepatitis B and C; (3) he repeatedly asked Dr. McDonald for medication, alternative treatment, and a biopsy to determine if he has any stages of liver disease due to hepatitis B and C, to no avail, and Dr. McDonald refused to recommend plaintiff for a consultation; and (4) Chuks denied him medication and a biopsy and misrepresented to plaintiff that she is a physician. (D.I. 275, 275, 276, 279)

It is undisputed that plaintiff has not received the liver biopsy or drug therapy he believes is necessary. The record, however, does not support a finding that such treatment was determined to be medically necessary. All health care providers are in agreement that a liver biopsy is not warranted, that plaintiff's liver function is within normal limits, and that no other treatment such as the administration of interferon and/or ribavirin is required. Finally, the record reflects continual monitoring of plaintiff's medical conditions. Indeed, the record indicates that with regard to HCV, there is no detection of RNA. Moreover, plaintiff has not refuted the medical explanation that because testing

does not detect RNA, treatment is not necessary. Plaintiff seems to equate "no treatment" to the lack of a liver biopsy and/or receiving interferon/ribavirin treatment.

Plaintiff did not produce any evidence to contradict defendants' testimonies that the treatment plaintiff desires is not medically necessary at this time. Nor has plaintiff refuted the record that indicates he is receiving reasonable treatment. Despite his protestations to the contrary, this is a clear case of disagreement over medical treatment. Finally, plaintiff rests a portion of his claim against Chuks based upon his belief that she was a physician and that her credentials otherwise rendered her incapable of evaluating and treating him. This claim does not rise to the level of an Eighth Amendment violation.

A reasonable jury could not find that the individual medical defendants were deliberately indifferent to plaintiff's medical needs. To the contrary, plaintiff is receiving medical treatment, monitoring, and care. There are no genuine issues of material fact and, therefore, the court will deny plaintiff's motions for summary judgment and will grant Dr. Durst, Dr. VanDusen, Dr. McDonald, and Chuks' motion for summary judgment.

### 2. Corporate defendant

When a plaintiff relies upon a theory of respondeat superior to hold a corporation liable, he must allege a policy or custom that demonstrates such deliberate indifference. *Sample v. Diecks*, 885 F.2d 1099, 1110 (3d Cir. 1989); *Miller v. Correctional Med. Sys., Inc.*, 802 F. Supp. 1126, 1132 (D. Del. 1992). In order to establish that CMS is directly liable for the alleged constitutional violations, plaintiff "must provide evidence that there was a relevant [CMS] policy or custom, and that the policy caused the constitutional

violation[s] [plaintiff] allege[s]." *Natale v. Camden County Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003) (because respondeat superior or vicarious liability cannot be a basis for liability under 42 U.S.C. § 1983, a corporation under contract with the state cannot be held liable for the acts of its employees and agents under those theories).

Assuming the acts of CMS's employees have violated a person's constitutional rights, those acts may be deemed the result of a policy or custom of the entity for whom the employee works, thereby rendering the entity liable under § 1983, where the inadequacy of existing practice is so likely to result in the violation of constitutional rights that the policymaker can reasonably be said to have been deliberately indifferent to the need. *See Natale*, 318 F.3d at 584 (citations omitted). "'Policy is made when a decisionmaker possess[ing] final authority to establish . . . policy with respect to the action issues an official proclamation, policy or edict.'" *Miller v. Corr. Med. Sys., Inc.*, 802 F. Supp. 1126, 1132 (D. Del. 1992) (alteration in original) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)). "Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Id.* (citing *Andrews*, 895 F.2d at 1480; *Fletcher v. O'Donnell*, 867 F.2d 791, 793-94 (3d Cir. 1989)).

Plaintiff argues that he is entitled to summary judgment against CMS as it failed to implement procedures and practices to ensure he receives treatment for his chronic care diseases. (D.I. 277) He argues that CMS denied his request for a biopsy and managed his care without a specialist referral. CMS argues that plaintiff's medical records do not support the existence of a genuine issue of material fact that it has been

deliberately indifferent to plaintiff's serious medical needs. (D.I. 297) CMS argues that it, not plaintiff, is entitled to summary judgment as it cannot be held liable under the theory of respondeat superior. CMS notes that plaintiff failed to produce any credible evidence that it failed to implement procedures and practices consistent with generally accepted professional standards that would ensure he receive treatment for hepatitis.

As discussed above, plaintiff receives continual medical care and treatment as well as monitoring of his medical conditions. The record reflects that CMS adopted the "CMS Hepatitis C Pathway" to provide guidance to its staff in treating HCV. (D.I. 286, ex. G-3, app. 292-296) Additionally, plaintiff's testimony that other inmates receive treatment for their hepatitis, including liver biopsies, discounts his argument that CMS has a policy to deny such treatment. (D.I. 285, app. 16) Notably, plaintiff's medical records indicate he has received regular medical attention. While plaintiff believes CMS should have referred him to specialists, the Eighth Amendment does not confer a constitutional right to demand either a particular type of medical treatment or a certain specialist. *Kendrick v. Frank*, 310 F. App'x 34, 38 (7th Cir. 2009).

A reasonable jury could not find that CMS has a policy or custom that demonstrates deliberate indifference to plaintiff's medical needs. There are no genuine issues of material fact and, therefore, the court will deny plaintiff's motion for summary judgment and will grant CMS' motion for summary judgment.

### 3. State defendants

The U.S. Court of Appeals for the Third Circuit has concluded that prison administrators cannot be deliberately indifferent "simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the

prison doctor." *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993). The Third Circuit clarified that "[i]f a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004) (discussing *Durmer*, 991 F.2d at 69). "[A]bsent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." *Id.* at 236.

Plaintiff argues that he is entitled to summary judgment in his favor and against Carroll and Welch as they ignored correspondence from him requesting their assistance in obtaining medical treatment. (D.I. 273, 278) Carroll argues that he had no personal involvement in the wrongs alleged by plaintiff, noting that prison officials are not deliberately indifferent because they do not respond to letters. Both State defendants argue that, because every medical provider has advised plaintiff that he is not sick enough to require treatment, plaintiff has not alleged a serious medical need. They reference plaintiff's extensive medical record that reflects a continuous course of medical care from 2003 until the filing of the complaint. Finally, they argue that, while plaintiff disagrees with his medical treatment, said disagreement is insufficient to establish a constitutional violation.

The record reflects that plaintiff wrote to Carroll once prior to filing this lawsuit seeking assistance in obtaining medical care. It is evident from the letter that plaintiff had seen physicians as he discusses their refusal to order a liver biopsy. Plaintiff contacted Welch after the lawsuit was filed. Plaintiff's communications with State

defendants leave no doubt that he was receiving medical care. Hence, absent evidence to the contrary, the States defendants were justified in believing that plaintiff was receiving adequate medical care. Finally, "absent viable claims that the medical defendants violated his constitutional rights [plaintiff] cannot state a claim against the non-medical defendants for failure to cure the medical defendants' conduct." *Serrano v. Folino*, No. 08-2107, slip op. at 8 (3d Cir. July 29, 2009).

There are no genuine issues of material fact and, therefore, the court will deny plaintiff's motion for summary judgment and will grant the State defendants' motion for summary judgment.[9]

## IV. CONCLUSION

For the above reasons, the court will deny plaintiff's motions for summary judgment, will grant defendants' motion for summary judgment, and will deny the remaining motions.

An appropriate order will issue.

---

[9]The court will not address the issues of Eleventh Amendment immunity and qualified immunity inasmuch as it finds that Carroll and Welch did not violate plaintiff's constitutional rights.